BAKER v. SANDS.

(Court of Civil Appeals of Texas. Austin. Oct. 25, 1911.)

1. EVIDENCE (§ 575*)—EVIDENCE ON FORMER TRIAL—REPRODUCTION.

The testimony of a witness who has testified on a former trial may be reproduced by any person who is able to give the testimony in substance, provided it is first shown that the witness is dead or beyond the jurisdiction of the court, and cannot be found after diligent inquiry, or that he has been kept away from the trial by the adverse party.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2401–2409; Dec. Dig. § 575.*]

2. WITNESSES (§ 388*)—CONTRADICTION—IMPEACHING TESTIMONY—FOUNDATION.

Where a witness who had testified on a former trial gave an affidavit, contradicting his former testimony, and on a subsequent trial several years thereafter, when the witness was living in another state, his testimony on the former trial was admitted on proof that he was beyond the jurisdiction of the court, the affidavit was inadmissible to contradict such testimony, under the rule that contradictory statements are inadmissible, unless a proper predicate is laid therefor, and this, though the witness is dead, or is absent from the jurisdiction.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1233–1246; Dec. Dig. § 388.*]

Appeal from Navarro County Court; J. M. Blanding, Judge.

Action by I. S. Baker against J. A. Sands. From a judgment for defendant on a cross-complaint, plaintiff appeals. Reversed and remanded.

Jack & Jack and Callicutt & Call, for appellant. El. J. Gibson, for appellee.

RICE, J. Appellant brought this action against appellee to recover the value of certain cotton belonging to him, alleged to have been converted by appellee. During the year 1902, it appeared that appellant was the tenant of appellee, and had raised a certain crop of cotton on 75 acres of land rented by him from appellee. It was alleged that during the fall of said year appellant, being desirous of removing from said premises, had turned over to appellee the crop of cotton thereon, with the agreement that appellee should gather and haul the same to market, and after deducting one-fourth thereof for his rent, and the expenses of gathering the same, and also paying certain items of indebtedness owing by appellant to himself and another, he was to deliver the remainder of the cotton to the People's National Bank at Ennis, for the benefit of appellant; it being alleged that the value of said cotton so gathered by appellee was the sum of $1,025.-47, and that appellee had failed to account to him, after deducting said above amounts, for the sum of $645.90, for which he brought suit.

Various defenses were urged to the suit of plaintiff; among others, that appellee had fully accounted to appellant for all of the cotton that he was entitled to, after deducting his share of the rent, expenses, etc. There was also a plea in reconvention on the part of appellee.

On trial, there was a verdict and judgment in behalf of appellee on his cross-action, from which this appeal is prosecuted.

The principal question raised in this appeal is presented by appellant's fourth assignment of error. There had been a former trial in this case in 1904, at which one Charles Allen, a witness sworn for the appellant, gave material testimony as to the amount of cotton gathered on the premises by appellee after he took possession thereof. This testimony showed that appellee had gathered some 10 bales of cotton more than he had accounted for to appellant. And the witness also gave damaging testimony against appellee, relative to the marking in the name of appellee, at his direction, of some cotton gathered from said premises, as well as to the deficiency in the weight of one of said bales. Subsequent to said trial, the same witness made an ex parte affidavit, in which he admitted that all of his testimony at the former trial was false and that he wished to retract it; that he at the time of said trial was on very unfriendly terms with appellee, and very much prejudiced against him, while he was on intimate terms with

---

appellant; and, further, that he was induced to give said testimony in appellant's behalf by appellant and certain of his friends.

On the present trial, it appeared from the bill of exceptions that this witness Allen was out of the state and beyond the jurisdiction of the court; whereupon appellant was allowed to reproduce the testimony of said Allen, given at the former trial, which was done. Thereupon the appellee, over appellant's objection, was allowed to and did introduce the ex parte affidavit of said witness Allen, taken subsequent to said first trial, contradicting his said testimony at said trial. Appellant, among other things, objected to the introduction of this affidavit, on the ground that a proper predicate had not been laid therefor, and the ruling of the court in admitting this affidavit is challenged by appellant's fourth assignment of error.

[1] No objection appears to have been made by appellee to the reproduction of this evidence. The rule seems to be that the testimony of a witness, who has previously given evidence on the trial of a case, may be reproduced by any person who is able to give, in substance, the testimony given by said witness, provided that it first be shown that said witness is dead, or is beyond the jurisdiction of the court, and cannot be found after diligent inquiry, or that he has been kept away from the trial by the adverse party. See 16 Cyc. 1088 et seq.; 20 Cent. Digest, §§ 2401–2406, inclusive; Greenl. Ev. vol. 1, § 163; 14 Ency. Ev. 584; Boyd v. St. L. S. W. Ry. Co., 101 Tex. 411, 108 S. W. 813, and cases cited; Id., 119 S. W. 1154; Sullivan v. State, 6 Tex. App. 319, 32 Am. Rep. 580; McInturff v. Insurance Co., 248 Ill. 92, 93 N. E. 369. This evidence having been reproduced on behalf of the plaintiff, the question here presented is whether or not appellee would have the right to impeach said witness by showing that he had made contradictory statements to those given at said former trial, without laying a predicate therefor. It is a well-settled rule of evidence, for which we need not quote authority, that no witness can be impeached in this way without laying a predicate for the introduction of the impeaching testimony; that is, by first calling the witness' attention to the time, place, and person to whom said contradictory statements may have been made, in order that the witness, if he desires so to do, may explain how he came to make such statements, if he admits making them, or give him the opportunity to deny having made the same. Appellee, however, contends that, where a witness is dead at the time the testimony is reproduced, or is beyond the jurisdiction of the court (which is treated in law as equivalent thereto), it is impossible to lay such predicate; and therefore, in the interest of justice, the opposite side should have the right to show such contradictory statements, without the necessity of laying such predicate, and that in the present case the court did not err in allowing the introduction of the ex parte affidavit, in the absence of such predicate.

[2] While there is some conflict in the decisions, the great weight of authority, both, in this country and in England, seems to be in support of the view that such contradictory statements are not admissible, unless the proper predicate is laid therefor, and that the death of the witness, or his absence from the jurisdiction of the court, furnishes no exception to the rule. See volume 30, p. 1125, Ency. Law (2d Ed.); Wigmore on Evid. vol. 2, § 1030 et seq.; Ency. Evid. vol. 7, p. 101; Mattox v. United States, 156 U. S. 242–245, 15 Sup. Ct. 337, 39 L. Ed. 409; Conrad v. Griffey, 16 How. (57 U. S.) 38, 14 L. Ed. 835; Stacy v. Graham, 14 N. Y. 492–499; Runyan v. Price, 15 Ohio St. 1, 86 Am. Dec. 459; Wroe v. State, 20 Ohio St. 460–472; Griffith v. State, 37 Ark. 324; Unis v. Charlton, 12 Grat. (Va.) 484; Kimball v. Davis, 19 Wend. (N. Y.) 437; Brown v. Kimball, 25 Wend. (N. Y.) 259; 6 Current Law, 2003; Lerum v. Giving, 97 Minn. 269, 105 N. W. 967; Omaha St. Ry. Co. v. Boesen, 74 Neb. 764, 105 N. W. 303, 4 L. R. A. (N. S.) 122; People v. Witty, 138 Cal. 576, 72 Pac. 177; People v. Compton, 132 Cal. 484, 64 Pac. 849; Ency. Plead. & Prac. vol. 10, p. 287; 2 Current Law, p. 2191. See Amer. Dig. (Dec. Ed.) vol. 20, § 380 (3), p. 2176; Stewart v. State (Cr. App.) 26 S. W. 203.

In Mattox v. United States, supra, wherein an effort was made to impeach the reproduced testimony of a witness given at a former trial, who had died since the trial of the cause, by contradictory statements made subsequent to the trial, it was held incompetent to do so. Justice Brown, after reviewing the decisions of the Supreme Court of the United States upon this subject, wherein it had been uniformly held that such evidence was not admissible, said:

"The cases in the state courts are by no means numerous; but those courts, so far as they have spoken upon the subject, are unanimous in holding that the fact that the attendance of the witness cannot be procured, or even that the witness himself is dead, does not dispense with the necessity of laying the proper foundation. Thus, in Stacy v. Graham, 14 N. Y. [492], counsel, while conceding the rule, relied upon two circumstances to relieve the case from its influence: The first was that the attendance of the witness could not be procured at the time of the trial; and, second, that the statements and declarations offered to be proved were made after the witness had testified, and were direct admissions that he had sworn falsely. It was held that if the statements came to the knowledge of counsel afterwards, and before the trial, it was his duty to apply for a commission, or move a postponement until the evidence could be procured. 'The mere absence of the witness,' said the court, 'has never been considered a reason for allowing

his unsworn statements to be proved, in order to affect his credibility.' The question was further elaborately considered in Runyan v. Price, 15 Ohio St. 1, 86 Am. Dec. 459, supra, in which one of the subscribing witnesses to a will had died before the trial, and his testimony, taken at the probate of the will, read in evidence. The contestants then offered evidence of his declarations respecting the capacity of the alleged testator to make a will at the time the one in question purported to have been made; but these were held, though by a bare majority of the court, to be inadmissible for the purpose of impeaching his testimony.

" 'It seems to us,' said the court, 'that to allow the death of a witness to work an exception would be to destroy the principle upon which the rule rests, and deny the protection which it was designed to afford. * * * In relieving one party of a supposed hardship, an equally serious one might be inflicted upon the other. * * * Without, therefore, the opportunity to the witness of explanation, or to the party against whom offered, of re-examination, we are of opinion that the supposed declarations lack the element of credibility which they should possess, before they can be used legitimately to destroy the testimony of the witness.' In Craft v. Commonwealth, 81 Ky. 250, 50 Am. Rep. 160, it was held that, where the testimony of a witness, given upon a former trial, was reproduced, the witness having died, testimony to the effect that the witness, subsequent to the former trial, stated that the evidence given by him on that trial was false was not competent. The rule is put upon the ground that if the impeaching statements were admitted there would be a strong temptation to the fabrication of testimony, by which important and true evidence might be destroyed. So, in Hubbard v. Briggs, 31 N. Y. 518, 536, the testimony of a deceased witness, given on a former trial of the case, was read in evidence. Subsequently the defendant offered to read the deposition of this witness in a chancery suit, for the purpose of contradicting his evidence as read, and impeaching him. The testimony was held to have been properly ruled out; no foundation having been laid for it. The fact that the witness was dead was held not to change the rule. Griffith v. State, 37 Ark. 324; Unis v. Charlton, 12 Grat. [Va.] 484; Kimball v. Davis, 19 Wend. [N. Y.] 437; [Brown v. Kimball] 25 Wend. [N. Y.] 259, supra. While the enforcement of the rule in case of the death of the witness, subsequent to his examination, may work an occasional hardship, by depriving the party of the opportunity of proving the contradictory statements, a relaxation of the rule in such cases would offer a temptation to perjury and the fabrication of testimony, which, in criminal cases especially, would be almost irresistible. * * * The fact that one party has lost the power of contradicting his adversary's witness is really no greater hardship to him than the fact that his adversary has lost the opportunity of recalling his witness, and explaining what his testimony would be to him. There is quite as much danger of doing injustice to one party by admitting such testimony, as to the other by excluding it. The respective advantages and disadvantages of a relaxation of the rule are so problematical that courts have, with great uniformity, refused to recognize the exception."

It must be remembered that the litigant also has a right in the reproduced testimony of a deceased or absent witness, and this right, we think, should not be lightly set aside or impaired. It is possible that if the witness whose testimony is thus assailed could have the opportunity of explaining that he might satisfactorily do so; but, since a deceased or absent witness, whose reproduced testimony is thus attacked, has not the power of explanation, it would seem to us that no right should ordinarily exist in the opposite party to thus neutralize the effect of such testimony. We do not, however, go to the extent of holding that there are no exceptions to the rule of evidence as herein stated; nor that circumstances might not arise where the court would feel justified, in its discretion, as suggested by Judge Wigmore, in his work on Evidence (volume 2, p. 1198, § 1031), in allowing such testimony; but we do not believe that the present case falls within any exception that it is possible for us to suggest.

In the present case, it clearly appears from the record that appellant was in possession of this ex parte affidavit, contradicting the witness' former testimony, several years prior to the last trial of this cause, from which this appeal is taken. He therefore had the opportunity of propounding interrogatories to this witness, for the purpose of showing that his former testimony was untrue, as set forth in said affidavit. The record further shows, notwithstanding the admission that he is beyond the jurisdiction of the court, that this witness was at the time of the trial living in New Mexico, and his deposition could have been easily taken; and to permit the impeachment of this witness by an ex parte affidavit would, under the circumstances disclosed by the record, give, in our opinion, an unfair advantage to the opposite side. For which reasons we think the court erred in admitting said testimony; and, so believing, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

KEY, C. J. While concurring in the result reached in this case, I do not indorse all that seems to be held in the opinion of Mr. Justice RICE. It is not believed that a party has the right to prove by other wit-

nesses what a particular witness testified to on a former trial of the case, merely because that witness has gone to and resides in another state. It is believed that the true rule is that the party offering to reproduce the testimony must show conditions which render it reasonably certain that he cannot procure the evidence of the absent witness by deposition or otherwise. When such conditions have been shown, and the testimony of the absent witness reproduced, and it is made to appear that the opposite party never could have laid a predicate to impeach, and there is nothing to indicate improper conduct by him, or in his behalf, in procuring the contradictory statement of the witness, made subsequent to the former trial, then it seems to me that proof of such contradictory statement ought to be admitted. Such impeaching testimony was held admissible by our Court of Criminal Appeals in Hamblin v. State, 34 Tex. Cr. R. 368, 30 S. W. 1075, and some other courts have made similar rulings.

The numerical weight of authority may be otherwise; but many of the cases relate to contradictory statements, made before the witness gave the testimony which had been reproduced. At any rate, the rule announced in the Hamblin Case appears to me to be the sounder. But the facts do not bring this case within that rule. The witness being in New Mexico, appellee could have taken his deposition, and laid the proper predicate for the impeaching testimony. It is no answer to say that, for the same reason, appellant had no right to reproduce the former testimony of the witness. Appellee did not interpose any objection to what was done in that respect.