### MORRIS v. DAVIS, Agent.    (No. 7076.)*

(Court of Civil Appeals of Texas. Austin. Feb. 17, 1927. Rehearing Denied March 9, 1927.)

**1. Evidence 581 — Permitting stenographic report of testimony of previous trial on showing witnesses were nonresidents, with no effort to obtain depositions, held error.**

Permitting official narrative stenographic report of testimony, given on former trial, to be read in evidence, on showing only that witnesses' absence was because of nonresidence with no effort made to obtain depositions, *held* error.

**2. Husband and wife 273(12), 276(9)—Community survivor or administrator could sue for damages in his own name.**

Community survivor or administrator *held* authorized to bring suit for injuries to shipment of cattle in his own name.

**3. Assignments 73, 121—Assigning partnership "notes and accounts" transferred cause of action for injuries to cattle shipped, authorizing assignee's suit in own name.**

Assignment by members of partnership firm of all "notes and accounts" of all kind and description belonging to firm, subsequent to accrual of cause of action for injuries to shipment of cattle, *held* sufficiently broad to transfer all interests in action authorizing assignee to maintain suit in his own name.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

---

Suit by J. P. Morris against James C. Davis, Agent. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Critz & Woodward, of Coleman, for appellant.

Snodgrass & Dibrell, of Coleman, and Terry, Cavin & Mills and Lewis Jeffrey, all of Galveston, for appellee.

BLAIR, J. Opinions on a former appeal stating fully the nature of this suit are reported in 257 S. W. 328, 259 S. W. 592, and 272 S. W. 1103. Suffice it to say here that the suit is to recover damages for injuries to a shipment of cattle from Hugo, Okl., to Coleman, Tex., during the period of federal control of railroads, and that a jury trial resulted in favor of appellee, the director general of railroads.

[1] Appellant predicates his appeal upon seven propositions of error, the last two of which should be sustained. They relate to the action of the court in permitting the court reporter's official narrative stenographic report of the testimony of witnesses C. S. Oakes and H. S. Baker, given in person on the former trial, to be read in evidence to the jury on this trial, the only excuse for their absence being that they were residents of the state of Oklahoma, and the only effort appellee made to have them present was as follows. J. A. Montgomery gave the following testimony:

"An effort was made on the part of the railway company to get Mr. Baker to attend court at this term—he refused to come. I seen C. S. Oakes and Mr. Baker both before I came over here—it was Saturday evening. Mr. Oakes refused to come here. I asked him; I thought we would ride on the same train together that day; I heard the agent ask him to come and he said, 'My business would not permit me to go and I can't go.'"

Appellee made no effort to obtain the depositions of these witnesses. Their testimony related to the only defense urged by appellee and submitted to the jury that the cattle were very poor in flesh, weak, and in no physical condition for shipment, and that the injuries complained of were directly caused by this condition rather than any of the acts of negligence charged against appellee. On this issue the testimony of these witnesses was very positive and pictured the cattle in a rather distressing condition at the time of shipment; and it was, in the main, the only evidence on the issue. The jury answered one special issue that the cattle were not injured, "as alleged in plaintiff's petition," and another special issue that some of the damage or injury was caused "by the condition of the cattle at the time of shipment." The court based its judgment upon these answers of the jury; so the materiality of the testimony is conclusive and is admitted to be so by appellee. The grounds of objection to the testimony were that it was hearsay, and that no proper predicate was laid for its introduction.

It seems that Texas civil courts have announced a different rule for the admission of this character of testimony from that of probably the numerical weight of authority. The Supreme Court held, in the case of Boyd v. Ry. Co., 101 Tex. 417, 108 S. W. 815:

"The proper predicate being laid to show that Lytle's whereabouts is unknown and that diligent search has been made to ascertain where he is, the evidence to prove what he testified to on a former trial should be admitted."

In the case of Baker v. Sands, 140 S. W. 521, this court held:

"The rule seems to be that the testimony of a witness, who has previously given evidence on the trial of a case, may be reproduced by any person who is able to give, in substance, the testimony given by said witness, provided that it first be shown that said witness is dead, or is beyond the jurisdiction of the court, and cannot be found after diligent inquiry, or that he has been kept away from the trial by the adverse party."

Apparently, for fear that the rule had not been made sufficiently clear, Judge Key added the following in the Baker-Sands Case:

"It is not believed that a party has the right to prove by other witnesses what a particular witness testified to on a former trial of the case, merely because that witness has gone to and resides in another state. It is believed that the true rule is that the party offering to reproduce the testimony must show conditions which render it reasonably certain that he cannot procure the evidence of the absent witness by deposition or otherwise."

In the case of Railway Co. v. Geary (Tex. Civ. App.) 194 S. W. 460, it was held:

"It may be first replied that, under a familiar exception to the hearsay rule, the testimony of a witness given at a previous trial between the same parties upon substantially the same issue, where the parties had the opportunity to examine and cross-examine him, is admissible on the offer of either party, if the witness is out of the state, out of the jurisdiction of the court, under the circumstances shown in this case."

The evidence on which the court concluded the former testimony admissible, "under the circumstances shown," is not set out in the court's opinion, and we assume that it met the requirements of the Supreme Court announced in Boyd v. Railway Co., supra, and of this court in Baker v. Sands, supra, since both cases were cited in support of the conclusion.

It is clear beyond dispute that the purpose of the rule requiring the "whereabouts" of the witness to be unknown, before his former testimony is admissible, was to require the taking of his deposition when his "whereabouts" is known, even though his residence be beyond the limits of the state. Or, as said by Judge Key, "conditions which render it

reasonably certain that he cannot procure the evidence of the absent witness by deposition or otherwise" should be shown by the party offering it. Texas civil courts cannot compel personal attendance of a witness who resides beyond the limits of the county where the case is tried, and, of course, cannot compel personal attendance of a witness who resides in another state; and for that reason the Legislature has prescribed that the deposition of a witness may be taken in either instance.

Now appellee cites numerous authorities which criticize the rule announced by our courts and hold that "absence from the jurisdiction of the trial" alone is generally accepted as ground for the admission of testimony at a former trial, it being reasoned that "there is on principle no distinction between a deposition and former testimony as to the condition upon which either may be used at the trial . * * * supposing, of course, that in each case there has been cross-examination," and further presuming that the witness will give the same testimony by deposition as he gave on the former trial. The effect of appellee's attack upon the additional prerequisite that the whereabouts of the witness be unknown is that the rule is without rhyme or reason, and that it should be set aside. This, we think, is beyond our prerogative. The Legislature has not given testimony taken at a former trial the same dignity as that produced by deposition; nor have our courts done so, and the wisdom or soundness of the reason for the rule is not involved. It might be suggested, however, in view of the majority opinion in the Baker-Sands Case, that the rule requiring the deposition or a reasonable showing why it could not be taken, the whereabouts of the witness being known, does find sound reason in the fact that it affords the opposite party an opportunity to lay a proper predicate for impeaching the witness. That is, the admitted hardship imposed by the Baker-Sands Case with reference to laying a proper predicate for impeaching the witness (by asking witness if he did not state at a certain time and place to a certain person, etc.) would be relieved by requiring a deposition where the whereabouts of the witness is known. And, while it may be presumed in theory that a witness will always testify to the same facts, human history has written many exceptions in actual practice as evidenced by many cases of admitted perjury, and it is the extreme case that usually fixes the rule of law.

[2, 3] Appellee insists, however, that, even though numerous errors were committed by the trial court, this court can only affirm the judgment because appellant sued as an individual to recover damages for injuries to cattle belonging to a partnership. We do not sustain the contention. The cause of action arose on or about April 15, 1919; at that time the cattle in question were either the property of the community estate of appellant and his deceased wife, and were held by appellant under a community survivor or administration proceeding, or under a power of attorney executed by all of the children of himself and his deceased wife, by which power of attorney and contract he was to continue the management of the community estate of himself and deceased wife in like manner and with like power and authority "as during the existence of the community administration," or they were the property of a partnership composed of J. P. Morris and his sons and daughters, known as the Morris Land & Cattle Company. Appellant was never officially discharged as community survivor or administrator of the estate of himself and his deceased wife. His children executed a release to him of any liability on his bond as community survivor prior to the accrual of this cause of action, and by this same instrument they authorized and empowered appellant to carry on the community estate of himself and his deceased wife in the same manner and with the same power and authority as if he were still the community survivor or administrator. If he was community survivor or administrator at the time he filed this suit, which we think he was—never having been officially discharged as such—he was authorized to bring the suit in his own name; or, if he was acting under power of attorney and contract between himself and his children, which continued the same arrangement and control of the community estate in like manner and with like power and authority as during the existence of the administration, he was authorized to bring the suit in his own name. If the cattle belonged to the partnership of Morris Land & Cattle Company, then the written assignment by the other members of the partnership firm of "all notes and accounts of all kinds and descriptions belonging to Morris Land & Cattle Company" to appellant on December 1, 1920, subsequent to the accrual of this cause of action, was sufficiently broad in its terms to transfer all the interest in this action to appellant, and he is therefore authorized to maintain the suit in his own name.

For the reasons stated, the judgment of the trial court will be reversed and the cause remanded for a new trial.

Reversed and remanded.